UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANE RIVERS,

        Plaintiff,

    v.                                  23-CV-154-LJV
                                          DECISION & ORDER

SUSAN SQUIRES, *et al.*,

        Defendants.

On February 17, 2023, the plaintiff—proceeding pseudonymously as "Jane Rivers"—commenced this action under 42 U.S.C. § 1983 and New York State law raising claims related to an alleged sexual assault she experienced while incarcerated at the Albion Correctional Facility ("Albion"). Docket Item 1. In addition to asserting claims against the correction officer who allegedly assaulted her,[1] Rivers asserts two claims against Albion Superintendent Susan Squires: (1) an Eighth Amendment claim for deliberate indifference, *id.* at ¶¶ 160-67, and (2) a First Amendment claim for retaliation, *id.* at ¶¶ 168-74. On February 9, 2024, Squires moved to dismiss the retaliation claim. Docket Item 17. Rivers then responded, Docket Item 22, and Squires replied, Docket Item 25.

For the reasons that follow, Squires's motion to dismiss is denied.

---

[1] Rivers asserts three claims against Correction Officer Jonathan DeJesus. Docket Item 1 at ¶¶ 147-59.

## BACKGROUND[2]

Albion is an "all-female prison" operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). Docket Item 1 at ¶ 19. On or about August 22, 2022, Rivers and Officer DeJesus were working in the Albion infirmary. *Id.* at ¶¶ 27-28. Throughout the day, DeJesus harassed and sexually touched Rivers without her consent. *Id.* at ¶¶ 30-35. Eventually, DeJesus "instructed [Rivers] to follow him into the infirmary bathroom," where he raped her. *Id.* at ¶¶ 37-47. Rivers "reported the rape late that evening or early the following morning" and "was taken to the hospital," where "a rape kit was performed." *Id.* at ¶¶ 49-52.

After she reported the rape, Rivers "was placed in solitary confinement" and then "transferred to Beford Hills Correctional Facility" ("Bedford"). *Id.* at ¶¶ 55-56. Squires "allowed or ordered" Rivers "to be held in isolation" and "to be moved to [Bedford]." *Id.* at ¶¶ 169-70. "As a result of being transferred to [Bedford], [Rivers] was unable to complete the class she was taking at Albion[,] . . . which would have allowed her to be released from custody in October 2022." *Id.* at ¶ 57. Because "she was unable to complete the class, [Rivers] was not released until January 17, 2023." *Id.* at ¶¶ 58-59.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[2] In deciding a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the complaint, Docket Item 1.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.     FAILURE TO STATE A CLAIM

To establish a claim for retaliation under section 1983, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Squires argues that Rivers has failed to state a retaliation claim because the complaint does not plausibly allege a causal connection between a protected activity—Rivers's report—and an adverse action.[3]  Docket Item 17-1 at 4-9.  Rivers responds that

---

[3] Squires also suggests that the complaint fails to plead that Rivers suffered an adverse action.  *See* Docket Item 17-1 at 6 ("Because the reporting of the alleged sexual abuse is a protected activity, this Court need only to consider the latter two elements.").  But Squires does not actually argue that either solitary confinement or a transfer resulting in a longer prison sentence are not adverse actions.  *See generally* Docket Item 17-1.  And as the case law cited by Rivers establishes, those actions clearly are adverse.  *See* Docket Item 22 at 4-5 (collecting cases).  Rivers therefore has adequately pleaded the second element of a retaliation claim.

3

the complaint raises a plausible inference of retaliatory motivation.  Docket Item 22 at 3-7.  This Court agrees with Rivers.

As a threshold matter, Squires argues that Rivers's allegations of retaliatory motive are "wholly conclusory" because Rivers "fails to include any dates or any other specificity that links her alleged confinement" to her report.  Docket Item 17-1 at 8.  Rivers responds that "she was immediately sent to solitary confinement after being taken to the hospital for a rape kit" and that "approximately a week later she was transferred to [Bedford]."  Docket Item 22 at 4.  Rivers also notes that while she believes amendment is "unnecessary," she could amend the complaint "to clarify the short timeline involved."  *Id.* at 3 n.1.

But the facts of the complaint raise a plausible inference that Rivers was confined and transferred right after her report.  *See* Docket Item 1 at ¶¶ 55-56 (alleging that after Rivers reported the rape, she "was placed in solitary confinement" and then "transferred to Bedford").  The Court therefore agrees with Rivers that amendment is unnecessary.  And a period of several days between a protected activity and an adverse action easily supports an inference of causal connection.  *See, e.g.*, *Wright v. Snyder*, 2023 WL 6379451, at *11 (D. Conn. Sept. 30, 2023) ("The Second Circuit has held that an adverse action occurring 'just days' after the plaintiff's protected activity raises a genuine dispute of fact about the causal connection." (quoting *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003)).  In fact, periods of up to six months can show causation, *see Espinal*, 558 F.3d at 129, and there is no colorable argument here that more than six months elapsed between Rivers's report and her confinement and transfer because

4

Rivers was released from DOCCS custody five months after the sexual assault, *see generally* Docket Item 1.

Squires also argues that Rivers cannot show retaliatory motive because there is a non-retaliatory explanation for the challenged actions. Docket Item 17-1 at 6-9. More specifically, Squires asserts that Rivers was isolated and transferred for Rivers's protection. *Id.* Squires explains that under the Prison Rape Elimination Act and related regulations and DOCCS directives, an official who learns that an inmate "is subject to a substantial risk of imminent sexual abuse . . . must take immediate steps to protect the incarcerated individual." Docket Item 17-1 at 6-8. In some circumstances, protective measures can include "housing changes or transfers."[4] *Id.* (citation omitted). So, Squires says, the challenged actions cannot serve as the basis for a retaliation claim because they were taken to protect Rivers, not to retaliate against her. *Id.*

Squires is correct that if Rivers were confined and transferred for her own protection, Rivers would not be able to sustain a retaliation claim. But at this stage, the Court draws all reasonable inferences in favor of Rivers—and as noted above, there is a reasonable inference that Squires acted with retaliatory motive when she allowed or ordered Rivers's isolation and transfer. Moreover, a plaintiff may succeed on a retaliation claim "if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). So the fact that Squires's actions may have been legally permissible in

---

[4] While a facility generally "shall not" place an inmate in "involuntary segregated housing" in that situation, "the facility may hold the inmate in involuntary segregated housing for less than 24 hours" while assessing whether "there is [an] available alternative means of separation from likely abusers." 28 C.F.R. § 115.43.

5

some situations is not dispositive of Rivers's retaliation claim. Indeed, that only raises an issue of fact that cannot be decided on a motion to dismiss.

In sum, the complaint raises a plausible inference that Squires ordered or approved Rivers's solitary confinement and transfer to Bedford in retaliation for Rivers's report. Rivers therefore has stated a retaliation claim against Squires.

## II.   QUALIFIED IMMUNITY

"A defendant is entitled to qualified immunity if (1) the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for the defendant to believe that [her] actions were lawful at the time of the challenged act." *Brandon v. Kinter*, 938 F.3d 21, 39 (2d Cir. 2019) (alterations, citation, and internal quotation marks omitted). "Because, on a Rule 12(b)(6) . . . motion, 'the facts supporting the qualified immunity defense must appear on the face of the complaint,' asserting qualified immunity as a defense in the earliest stages of litigation, before development of a relevant factual record, usually fails to result in dismissal of the complaint." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) (alterations omitted) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

Squires argues that she is entitled to qualified immunity with regard to Rivers's retaliation claim because it was "objective and reasonable" for her to believe her actions were lawful. Docket Item 17-1 at 9-11. In other words, Squires asserts that because there was a legal basis for isolating and transferring Rivers, Squires "did not believe her conduct violated a clearly . . . established right." *Id.* at 11.

But as Rivers argues, Docket Item 22 at 7-9, Squires misunderstands how qualified immunity applies to a retaliation claim:  The question is not whether Squires's actions themselves were permissible, but whether it was permissible for Squires to take those actions for purposes of retaliating against Rivers.  *See Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir. 1995) ("[A]n inmate's right to be free of retaliation for filing grievances [is] . . . a clearly established statutory or constitutional right[] of which a reasonable person would have known." (citation and internal quotation marks omitted)); *see also Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) ("[W]here a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.").  And again, Squires's assertions about why she did what she did simply raise issues of fact that this Court cannot decide now.

Squires therefore is not entitled to qualified immunity at this early stage.

## **CONCLUSION**

For the reasons stated above, Squires's motion to dismiss, Docket Item 17, is DENIED.  Squires shall answer the complaint within 21 days of the date of this order.

SO ORDERED.

Dated:   May 24, 2024
             Buffalo, New York

                                                                    */s/ Lawrence J. Vilardo*
                                                                    LAWRENCE J. VILARDO
                                                                    UNITED STATES DISTRICT JUDGE